UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MICKEY WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:02-CV-634 |
| ) | *Judge Curtis L. Collier* |
| RANDY HOLT, *et al.* ) | |
| ) | |
| Defendants. ) | |

**M E M O R A N D U M**

**I. Introduction**

This *pro se* civil rights action for damages under 42 U.S.C. § 1983 was brought by Mickey Williams ("Williams"), a prisoner now confined in the Northeast Correctional Complex in Mountain City, Tennessee. Williams alleges various law enforcement officers used deadly excessive force or failed to intervene to protect him from such force during his apprehension and arrest in Grainger County, Tennessee. Several motions are currently pending. One defendant officer, Tennessee Highway Patrol Trooper James Harville ("Trooper Harville" or "Defendant"), has filed a motion for summary judgment; a supporting brief; his own affidavit; and copies of Williams' state criminal judgments (Ct. File No. 82). Williams opposes the motion (Ct. File No. 83) and has filed four motions of his own (Ct. File Nos. 84 - 86, 89), as well as several eyewitness statements (Ct. File No. 28, Witness Notes, Tennessee Bomb and Arson Chronology of Events). He has also written comments and questions in the margins of one of those statements and at the bottom of a diagram of the scene, perhaps, to undermine Trooper Harville's affidavit testimony. The final motion is a motion to quash filed by Defendant Michael Hopson, a Blaine City police officer (Ct. File No. 90).

The summary judgment motion brought by Trooper Harville will be addressed first.

## II. Summary Judgment Standards of Review

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(C). In considering such a motion, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The moving party does not have to offer evidence disproving the nonmoving party's claim but may carry its burden by showing an absence of evidence to support the nonmoving party's case. *Id.* at 325. A plaintiff facing the prospect of summary adjudication cannot "sit back and simply poke holes in the moving party's summary judgment motion," *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990); cannot rest on his pleadings or allegations; but instead, must present material evidence in support of those allegations. *Celotex*, 477 U.S. at 324. Bare contentions will not suffice, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 581-82 (6th Cir. 1992), nor will a mere scintilla of evidence. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). Summary judgment is appropriate if a court concludes a fair-minded jury could not return a verdict in favor of a plaintiff based on the evidence presented. *Id.* at 251-52.

## III. Factual Background

These are the facts as Williams portrays them in his verified complaint. On March 12, 2001, Williams was at his girlfriend's home. The home was on fire and was engulfed in thick smoke. Seven officers were present, including Trooper Harville. One of the officers ordered Williams to come out of the home. However, the only exit was blocked. As Williams choked on the acrid fumes, he pleaded for the officers to help him get out of the burning house. The door then opened and, though smoke stung his eyes and he could hardly see, he threw himself on the porch, guided only by the sound of shouting voices. He dove for the porch for the purpose of showing the officers he was unarmed. Williams was instructed to rise and come away from the burning building.

As Williams rose, intending to comply with the demand, shots rang out. Williams was struck by bullets in his leg, groin and buttocks. (He was shot in the buttocks after he fell to the ground and rolled over.) Later, he learned Randy Holt, then Chief Deputy of the Granger County Sheriff's Department,[1] had shot him four times without reason, while the other officers did nothing to protect him from being shot. He had followed the officers' commands and, at the time he was ordered to rise and come away from the burning building, had no weapons on his person. The officers' actions, according to Williams, amounted to unnecessary and excessive force and, thus, violated the Constitution. For this alleged infringement of his civil rights, Williams seeks compensatory and punitive damages.

Trooper Harville's affidavit provides context for Williams' account of the incident. Trooper Harville testifies in his affidavit to the following facts. He had been called to the Terry Johnson residence to assist local law enforcement officers in a matter involving a suspected homicide. (Terry Johnson was the purported victim and Williams the supposed perpetrator.) Copious amounts of

---

[1] In a prior order, Holt and several other officers were dismissed as defendants in this lawsuit.

3

blood covered the porch and area surrounding the home when Trooper Harville arrived. Williams was inside the residence, though periodically, he would emerge from the front door, wielding a knife or two.[2] Each time this occurred, the officers would try to persuade him to drop the knives so they could enter the house to determine the victim's condition. And each time, Williams refused to drop the knives and went back into the residence. Williams also stated he had already killed Mr. Johnson, so there was no need for the officers to check on him.

At some point, Williams set the house on fire and barricaded himself inside. The officers urged him to come out of the residence and, eventually, after an officer kicked open the door, Williams emerged with the knives.[3] Officers were yelling at him to drop the knives. Amid much confusion, Williams came straight at Chief Deputy Holt, who was some distance away from Trooper Harville. Holt fired his weapon at Williams several times; Williams kept advancing and then began to fall. Holt commented that his gun was jammed. One knife was laying on the porch.[4] Trooper

---

[2] Despite the requirements of Rule 56(e), Federal Rules of Civil Procedure, Williams did not file an affidavit taking issue with Trooper Harville's averments that Williams possessed knives when he exited the Johnson home. Moreover, with one possible exception, the *unsworn allegations* made in Williams' response to the summary judgment motion differ with Harville's sworn affidavit testimony only on minor points. (The one exception, perhaps, is Williams' claim—contained not only in his response but also in his sworn complaint—that he did not have a weapon *on his person* when he rose from the porch, whereas Harville avers Williams did not drop the knives and still had them in his hands when he started to fall after being shot.) Therefore, the Court assumes Williams accepts the facts contained in Trooper Harville's affidavit as being true, with the aforementioned exclusion.

[3] Williams alleges he threw himself on the porch *to show the officers* he was unarmed (Compl.¶ IV), perhaps to imply he had no knives at this point in time. However, he did not allege, much less aver, that he, in fact, *was* unarmed when he emerged from the Johnson residence. In any event, the record does not support such a position.

[4] A 22-inch hunting knife was found on the porch. *State v. Williams*, No. E2004-01617-CCA-R3-CD, 2005 WL 2240736, at *3 (Tenn. Ct. Crim. App. Sept. 15, 2005), *perm. to app. denied* (Tenn. Feb. 21, 2006). Though Williams has not provided the details regarding his conviction, this information was accessed through the Court's Westlaw database.

4

Harville handcuffed Williams and called for an ambulance. Ultimately, Williams was convicted by a jury in the Grainger County Criminal Court of second degree murder, as well as arson.

## IV. Discussion

In Defendant Harville's motion, he argues he is entitled to summary judgment because his affidavit testimony and other submissions show the use of deadly force was reasonable under the circumstances, and because, even if it was not reasonable to use deadly force, he was in no position to prevent the use of such force. Alternatively, he suggests he is entitled to summary judgment because he enjoys qualified immunity from liability.

The Court once again observes Williams did not file a counter-affidavit setting out any contravening facts to Defendant Harville's account, though he has the burden of persuasion to show there is a genuine issue for trial, by setting forth specific facts, through means of affidavits or other evidence. Fed. R. Civ. P. 56(e); *Beard v. Banks*, 126 S.Ct. 2572, 2578 (2006) (plurality opinion) (citing Rule 56(e)). However, he has submitted a response to the summary judgment motion, insisting Trooper Harville violated his duty to exhaust, or to ensure others had exhausted, all other reasonable means of apprehension, such as using mace or pepper spray, before resorting to deadly force. Williams also suggests deadly force was not justified because he was not actively resisting or fleeing from arrest and because he was given no warning that lethal force would be used. *See Garner v. Tennessee*, 471 U.S. 1, 11-12 (1985) ("[I]f the suspect threatens the officer with a weapon . . . deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.").

Contrary to Williams' exhaust-other-means argument, "[t]he Fourth Amendment does not require law enforcement officers to exhaust every alternative before using justifiable deadly force."

5

*Forrett v. Richardson*, 112 F.3d 416, 420 (9th Cir. 1997). *See also Deering v. Reich*, 183 F.3d 645, 652-53 (7th Cir.1999) (same). As the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has said: "The fourth amendment reasonableness standard does not turn on the availability of less intrusive alternatives." *Collins v. Nagle*, 892 F.2d 489, 493 (6th Cir. 1989). Clearly, Williams's proposal deadly force is justified only after all other options have proven futile has no basis in the law and is frivolous.[5]

Before turning to Trooper Harville's first argument, the Court notes he is not subject to suit for monetary damages in his official capacity under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 & n.10 (1989). Thus, this case only concerns Williams' request for damages from Trooper Harville in his individual capacity.

### A. The use of deadly force was justified

The right purportedly transgressed was Williams' right not to be subjected to, and to be protected from, excessive deadly force during his arrest. The logical starting point for a discussion of this right begins with the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394 (1989) ("[A]ll claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest . . . or other 'seizure' of a free citizen, should be analyzed under the Fourth Amendment and its 'reasonableness' standard.") This amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. Using deadly force against a suspect is a seizure of the most intrusive kind and is constitutionally authorized only if "the officer has probable cause to believe that the suspect

---

[5] Williams' other suggestions (i.e., lethal force was unreasonable since he was not resisting arrest or warned that such force would be used) will be discussed later in this opinion.

6

poses a threat of serious physical harm, either to the officer or others." *Garner v. Tennessee*, 471 U.S. 1, 9,11 (1985); *accord, Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir.1988) (A person has "a right not to be shot unless he [is] perceived to pose a threat to the pursuing officers or others.") (citations omitted).

The challenged conduct must be viewed from the perspective of a reasonable officer on the scene, in light of the facts and circumstances facing the officer—not from the perfect vision of hindsight. *Graham*, 490 U.S. at 396; *Haugen v. Brosseau*, 351 F.3d 372, 387 (9th Cir. 2003). A court evaluating such conduct must carefully consider the totality of the circumstances surrounding the seizure, being mindful that the decision as to the appropriate amount of force often is made instantaneously under tense, uncertain, and rapidly-developing conditions. *Garner*, 471 U.S. at 8-9. Such a "standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396). Nonetheless, it will be the rare case where deadly force is constitutionally permissible. *Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir.2005).

In this case, there was a large amount of blood outside the home and Williams had confessed to murder—unquestionably, a serious crime of violence. During the standoff which preceded the shooting, Williams carried one or two knives each time he stepped onto the porch from the house. According to interview notes submitted by Williams himself, officers at the scene stated Williams had made several threats to use the weapon(s) to harm the officers; had unsheathed a knife prior to the standoff; had pointed the knife at a nearby officer; had said, "I'm not going to jail;" and, with knife in hand, had warned another officer that if he came any closer, he would give the officer what

7

he had given "the other guy" (Ct. File No. 28, Witness notes of Jeffrey Lynn Daniel and Greg Dalton). What is more, the record supports Williams was armed with at least one knife when he hurled himself onto the porch to escape the smoke and flames in the house. After the officers ordered him to drop his weapon,[6] Williams rose from the porch and "came straight at" Holt, whereupon Holt fired his weapon at Williams, hitting him four times.

From the perspective of a reasonable officer at the scene, the circumstances described above would have created a reasonable perception of serious danger to Holt's life or person. *Boyd v. Baeppler*, 215 F.3d 594, 601 (6th Cir. 2000) ("We view the scene and activity from the perspective, then, of the reasonable police officer at the scene based on reports and information received and what he has observed."). Whether Williams intended to comply with the officers' orders to come

---

[6] Though Williams claims he complied with those orders and Defendant Harville avers he did not, the state appellate court made the following findings: "Upon exiting the house, [Williams] ran toward Chief Holt, who ordered [Williams] to drop the knife. [Williams] refused and was shot by Chief Holt." *State v. Williams*, No. E2004-01617-CCA-R3-CD, 2005 WL 2240736, at *2 (Tenn. Ct. Crim. App. Sept. 15, 2005), *perm. to app. denied* (Tenn. Feb. 21, 2006). A doctrine known as collateral estoppel bars the relitigation of issues which have been decided in a prior suit between the same parties. A branch of the doctrine, which is known as non-mutual defensive collateral estoppel, permits a non-party to preclude a party to a former suit from relitigating a previously determined issue in a subsequent lawsuit against the non-party. *Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 320-30 (1971). Tennessee applies this type of collateral estoppel. *See Trinity Industries, Inc. v. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159, 185 (Tenn. Ct. App. 2001) (citing *to Phillips v. General Motors*, 669 S.W.2d 665 (Tenn. Ct. App. 1984)). Since this Court must give the same effect to the Tennessee court judgment as would another Tennessee court, *see* 28 U.S.C. § 1738, and since a Tennessee court would allow Defendant Harville to bar Williams from relitigating the issue of whether he refused to drop the knife and ran towards Holt, the Court would find the issue precluded from further decision here.

However, collateral estoppel is an affirmative defense and, generally, is waived unless asserted in an answer or, in some fashion, in a summary judgment motion. *Gilbert v. Ferry*, 413 F.3d 578, 580 (6th Cir. 2004). Defendant Harville followed neither course of action, which is easily understood, since Williams' state court criminal conviction was not final until February 21, 2006, a date well after Defendant Harville filed his answer and dispositive motion. At any rate, even if Defendant Harville has waived a collateral estoppel defense, any dispute over this matter does not qualify as a material issue, for reasons explained later in this opinion.

8

away from the burning house when he rose from the porch, as he claims, is irrelevant to the issue of whether Holt's action was reasonable. *Bell v. City of East Cleveland*, 125 F.3d 855, 1997 WL 640116, at *3-*4 (6th Cir. Oct. 14, 1997) (unpublished) (observing a suspect's intentions and thoughts have no application to an inquiry into the reasonableness of an officer's actions). Indeed, without direct contradiction by Williams, Holt avers he fired the shots in self-defense (Ct. File No. 49, Affidavit of Randy Holt). And though Williams argues he was not attempting to escape apprehension or resisting arrest when he was seized by deadly force, his actions preceding the shooting do not demonstrate he would have quietly submitted to arrest and, instead, show "he would do almost anything to avoid capture." *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992).

The Sixth Circuit has observed: "We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." *Id.* Given the totality of circumstances,[7] a reasonable officer in Holt's position would have felt his life or person to be in danger.

Therefore, recognizing the deference to be afforded an officer's decision to shoot, the Court finds Holt was justified in using whatever force was necessary, even deadly force, to protect himself. This is so even if, as is claimed, Williams did not have a knife on his person when he was shot. *See Untalan v. City of Loraine*, 430 F.3d 312, (6th Cir. 2005) (reasonable officer could have used lethal

---

[7] According to the Tennessee Court of Criminal Appeals' opinion in Williams' state criminal proceedings, Williams had followed the victim, who was bleeding from his wounds, into the victim's home and held a knife to the throat of the victim's wife, before locking her and her children in a bedroom, from which she and the children managed to escape by crawling through a window. *State v. Williams*, 2005 WL 2240736, * 2 (Tenn. Crim. App. Sept. 15, 2005), *application for perm. to app. denied* (Tenn. 2006). According to Holt, he had been told about these events prior to the shooting (Ct. File. No. 28, Witness notes of Randy A. Holt).

9

force acting on perception suspect still had a knife, even if in hindsight the facts show differently); *Milstead v. Kibler*, 243 F.3d 157, 165 (4th Cir. 2001) (officer acted reasonably in shooting unarmed suspect despite mistaken belief he was armed). And it is still so even if Williams was not warned that deadly force would be used because Holt had what he reasonably perceived to be an armed suspect in a murder and arson "coming at" him and had to immediately resolve whether to fire his weapon and because, under the circumstances in this case, no warning would have been feasible. *Turpin v. Mueller*, 37 Fed. Appx. 151, 154 (6th Cir. May 17, 2002). Moreover, if a warning was required, the record permits the Court to find Williams knew he was dealing with law enforcement officers and also knew Holt and, perhaps, other officers had drawn their firearms. (Ct. File No. 28, Witness notes). This provided a sufficient warning to Williams that, if necessary, deadly force would be used.

In sum, Defendant Harville was justified in using deadly force against Williams.

**B.     Trooper Harville was in no position to prevent the use of deadly force**

If the Court had found Holt's decision to use deadly force was not objectively reasonable, the question would become whether Trooper Harville committed a constitutional tort by failing to protect Williams from such force.

It must first be noted Williams does not claim Defendant Harville himself used deadly force, but rather Defendant Harville failed to protect him from another officer's use of deadly excessive force.

Even if an officer does not employ excessive force himself, he can still be held liable if he owes the victim a duty of protection against the use of deadly excessive force by other officers. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). To prevail on a "failure to protect" claim, a

10

plaintiff must show: "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.*[8]

Trooper Harville attested in his affidavit he was "some distance" from Holt when Williams came towards him. No evidence to show the exact distance has been placed in the record by Williams. Be that as it may, the record does not support an inference Trooper Harville had enough time to intercede in the shooting; instead, it implies the events immediately preceding the shooting occurred rapidly. Absent some evidence to suggest Defendant Harville had a realistic opportunity to intervene in what he should have recognized as unlawful conduct (which the Court has *not* found), Williams has failed to bear his burden of proof on the elements of his failure-to-protect claim. *See Catrett*, 477 U.S. at 323 (where nonmoving party fails to make a sufficient showing on an element of his case on which he bears the burden of proof, his opponent is "entitled to a judgment as a matter of law").

### C. Defendant Harville enjoys qualified immunity

Qualified immunity protects state officials from suit where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *See Malley v. Briggs*, 475 U.S. 335, 341, (1986) (qualified immunity safeguards "all but the plainly incompetent or those who knowingly violate the law"). The qualified-immunity inquiry has two components. First, a court must ask whether "the facts alleged show the officer's conduct violated a constitutional right" when "[t]aken

---

[8] While an excessive-force claim and a failure-to-protect claim have different elements and are legally distinct, they are somewhat intertwined since the duty to protect will not arise unless there was excessive force.

11

in the light most favorable to the party asserting the injury." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citation omitted). If the answer is "yes," the court then asks whether the right was clearly established. *Id.* at 201.

Having found Williams has not alleged a constitutional violation on the part of Trooper Harville, the Court is not obliged to determine whether the right at issue was well-established at the time of the shooting. *Ibid.* ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). Thus, Defendant Harville also enjoys qualified immunity from this suit for damages.

### V.  Conclusion as to Summary Judgment Motion

The Court finds there is no genuine issue of material fact and that Trooper Harville is entitled to judgment as a matter of law because the use of deadly force was justified and because Defendant Harville did not violate Williams' Fourth Amendment right to be protected from deadly excessive force and finally, because Defendant Harville enjoys qualified immunity from this lawsuit. Accordingly, his summary judgment motion (Ct. File No. 82) will be **GRANTED** by separate order.

### VI.  Other Motions

**A.     Williams' Motion for the Court to Appoint Person to Effect Service on Four Remaining Defendants.**

In this motion, as its title clearly indicates, Williams requests appointment of an appropriate person to serve process on four remaining defendants (Court File No. 85). However, there are only two remaining defendants. These two police-officer defendants have not only been served with process, but have also responded to the complaint (Ct. File Nos. 19, 26). Therefore, Williams' motion will be **DENIED** as **MOOT** as to service on the "remaining" defendants.

To the extent the motion is intended to be a request for the Court to appoint someone to effect service on the four defendants who were dismissed by prior order, the arguments made in the motion are iterations of prior arguments that have already been considered and rejected. At any rate, since those particular defendants have been dismissed, the motion also would be **DENIED** as **MOOT**, if viewed in this alternative light.

### B. Williams' Motion for Discovery, Motion to Compel

Because these two motions are intertwined, they will be addressed together. In the first of these motions, Williams, ostensibly, asks the Court to allow him to engage in discovery under Rules 34 and 26 of the Federal Rules of Civil Procedure and also to permit a Rule 26(f) meeting of the parties to be held to develop a plan for discovery (Court File No. 86). Attached to the motion is a copy of his first set interrogatories, addressed to Defendants Harville, Michael Hopson and Jeffrey Daniel. At the bottom of the filing, dated April 18, 2006, he has affixed his signature, certifying he mailed copies of the entire document to the attorneys who are representing these defendants. The second motion, filed on June 8, 2006, is a motion to compel Defendants Hopson and Daniel to respond to those interrogatories (Court File No. 87).

A party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1). However, "leave of court is generally unnecessary before undertaking discovery under the Federal Rules of Civil Procedure, including depositions, interrogatories, requests for production of documents, and requests for admissions." *Holloway v. Lockhart*, 813 F.2d 874, 880 n.3 (8th Cir. 1987). As to Williams' request

13

for a Rule 26(f) conference, the Rule itself exempts proceedings listed in Rule 26(a)(E) from a meeting to develop a discovery plan and one of the exempted categories are civil suits filed *pro se* by state prisoners. Fed. R. Civ. P. 26(a)(E)(iii).

Accordingly, Williams' request to be allowed to engage in discovery will be **DENIED** as unnecessary and his request for a Rule 26(f) meeting will be **DENIED** because this instant case falls within a category of cases which are exempt from such a meeting (Ct. File No. 86).

Additionally, while the part of the second motion seeking to compel discovery responses from Defendant Hopson has become **MOOT** because this Defendant has answered the interrogatories posed to him (Ct. File No. 88, Response to Motion to Compel and Attach. No. 1), the part of the motion that asks the Court to compel Defendant Jeffrey Daniel to answer the interrogatories remains. This aspect of the motion (Court File No. 87) will be **GRANTED**, to the extent that Defendant Daniel will be **ORDERED** to **SHOW CAUSE** as to why he has failed to answer the interrogatories or to file objections with the Court.

### C. Williams' Renewed Motion to Compel and Defendant Hopson's Motion to Quash

These last motions are also interrelated and they too will be discussed jointly. In his renewed motion, Williams asks the Court to compel Defendant Hopson to answer Interrogatories numbered 3, 7-10, 16-24, and 34 on the grounds the answers he has provided are evasive and incomplete (Ct. File No. 89). In response, Defendant Hopson has filed what is labeled a motion to quash, which will be treated as a response to the motion to compel (Ct. File No. 90). In his response, Defendant Hopson argues he has offered complete and forthcoming answers to the interrogatories propounded to him, even though the vast majority of the interrogatories were duplicative, incoherent or irrelevant. He has submitted no evidence and no developed argument to reveal why each answer

14

was complete and has not explained why the interrogatories were duplicative, incoherent or irrelevant. He further suggests he should not be required to answer interrogatories that will produce nothing more than irrelevant, objectionable, non-discoverable responses. Again, Defendant Hopson has supplied no specifics to explain his objections.

Before filing a motion to compel discovery, a party must attempt to confer with the unresponsive party in an effort to obtain the desired material without court intervention. Fed. R. Civ. P. 37(a)(2). A motion to compel must include a certification that such an effort has been made. Fed. R. Civ. P. 37(a)(2)(B). Because Williams' motion to compel does not contain the necessary certification, the motion will be **DENIED** (Ct. File No. 89).

Finally, each party has asked for the costs they have incurred in connection with this matter. Rule 37(a)(4) provides that if a motion to compel is granted, the court shall, after opportunity for hearing, require the party whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order. Williams, however, has not prevailed on the motion and is not entitled to expenses.

> If the motion is denied, the court . . . shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(B).

The Court is unable to reach a conclusion on the existing record as to whether either party's position was "substantially justified." *See Doe v. Lexington-Fayette Urban County Gov't.*, 407 F.3d 755, 766 (6th Cir. 2005) ("A motion is substantially justified if it raises an issue about which there

15

is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.") (internal quotation marks omitted). Williams, as the proponent of the motion to compel, has not demonstrated how each challenged response is incomplete or evasive and Defendant Hopson has offered only generic, nonspecific objections which do not show precisely how each subject interrogatory is irrelevant or why he is entitled to withhold an answer. Therefore, the Court will **DENY** both parties' respective requests for their reasonable expenses.

A separate order will enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**