UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MICKEY WILLIAMS, )
)
    Plaintiff, )
)
v. ) NO. 3:02-CV-634
) *Chief Judge Curtis L. Collier*
RANDY HOLT, *et al.* )
)
    Defendants. )

## MEMORANDUM

This *pro se* civil rights action for damages under 42 U.S.C. § 1983 was brought by Mickey Williams ("Williams"), a prisoner now confined in the Northeast Correctional Complex in Mountain City, Tennessee. Williams alleges various law enforcement officers used deadly excessive force or failed to intervene to protect him from such force during his apprehension and arrest in Grainger County, Tennessee. Several motions are currently pending, the first of which is an unopposed motion for summary judgment filed by the two remaining defendants, Jeffrey Daniel, a Rutledge, Tennessee police officer, and Michael Hopson, a Blaine City, Tennessee police officer (Ct. File No. 97) . In support of their motion, both defendants offer: a supporting brief; their own affidavits; and copies of Williams' state criminal judgments (Ct. File No. 98, Attachs. 1-3 to Ct. File No. 97).

### I.    STANDARD OF REVIEW

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(C). In considering such a motion, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The moving party does not have to offer evidence disproving the nonmoving party's claim but may carry its burden by showing an absence of evidence to support the nonmoving party's case. *Id.* at 325. A plaintiff facing the prospect of summary adjudication cannot rest on his pleadings or allegations, but instead, must present material evidence in support of those allegations. *Id.* at 324. Summary judgment is appropriate if a court concludes a fair-minded jury could not return a verdict in favor of a plaintiff based on the evidence presented. *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986).

## II.     FACTUAL BACKGROUND

These are the facts as Williams portrays them in his verified complaint. On March 12, 2001, Williams was at his girlfriend's home, which was on fire and engulfed in thick smoke. Seven officers were present, including Defendant Officers Hopson and Daniels. Williams was ordered to come out of the home, though the only exit was blocked. As Williams choked on the fumes, he pleaded for the officers to help him escape from the burning house. The door opened and Williams threw himself on the porch for the purpose of showing the officers he was unarmed. He was instructed to rise and come away from the burning building.

As Williams rose from the porch, intending to comply with the demand, shots rang out and

bullets pierced Williams' leg, groin and buttocks. (He was shot in the buttocks after he fell to the ground and rolled over.) Williams learned later Chief Deputy Randy Holt of the Granger County Sheriff's Department,[1] had shot him four times without reason, while the other officers stood by and did nothing to protect him from being shot. He had complied with the officers' orders and, at the time he was ordered to rise and come away from the burning building, he had no weapons on his person. The officers' actions, according to Williams, amounted to unnecessary and excessive force and, thus, violated the United States Constitution. For this alleged infringement of his civil rights, Williams seeks compensatory and punitive damages.

The Defendants' affidavits lend context to Williams' account of the incident. Defendant Hopson avers he was dispatched to the residence of Terry Johnson, who was believed to have been killed by Williams. Upon his arrival, he observed Williams on the front porch of the Johnson home brandishing two knives, while officers at the scene urged Williams to let them enter the home to assist Johnson. Williams refused these requests; replied he had already killed Johnson; entered the home; barricaded the door; and set the house afire.

Several minutes later, Williams asked the officers to kick the door open because he could not get it to open. An officer kicked open the front door, and Williams emerged, crawling out on the front porch, with a knife in his hand. Williams was ordered to drop his weapon, but instead he ran towards Chief Deputy Holt brandishing the knife, in an aggressive and threatening manner. Holt then shot Williams. At the time of the shooting, both Williams and Holt were at a considerable distance from Defendant Hopson.

---

[1] In prior orders, Holt and all but the two remaining officers were dismissed as defendants in this lawsuit.

3

Defendant Daniels, in his affidavit, makes the following averments. He was called to the Johnson home to look into a reported fight and encountered Williams at a neighboring home. Seeing blood on Williams, Defendant Daniels asked him "what was going on." Williams responded he was not going to jail; pulled out a knife; held it in a threatening manner; and, with another officer in pursuit, ran around the house and into the Johnson home, which he then set on fire. A fire truck arrived, and Defendant Daniels commenced to move the police vehicles to give the fire truck closer access to the home. As he completed this chore, Defendant Daniels observed officers kick in the door and Williams crawl out the door and onto the front porch. Defendant Daniels then saw Williams stand up, holding two knives, and, disregarding Chief Deputy Holt's orders to stop, lunge at the Chief Deputy. The Chief Deputy fired his weapon from 15 to 25 feet away. At this time, Defendant Daniels was "a considerable distance" from both Williams and Chief Deputy Holt.

### III.  DISCUSSION

In the summary judgment motion, Defendants Hopson and Daniels argue they are entitled to summary judgment because the undisputed evidence shows the use of force was reasonable and because, in any event, they were in no position to prevent the use of such force. Alternatively, they suggest they are entitled to summary judgment because they enjoy qualified immunity from liability.

Before turning to the first argument, the Court notes these defendants are subject to suit for monetary damages in their official capacities under § 1983 only if Williams shows he has suffered harm because of a constitutional violation *and* the harm was caused by a policy or custom of the entity--in this case, Blaine City and the City of Rutledge. *See Collins v. Harker Heights, Tex.,* 503 U.S. 115, 120 (1992). In other words, Williams must identify the policy, connect the policy to the

cities, and show that the particular injury was incurred because of the execution of that policy—none of which Williams has done. *See Garner v. Memphis Police Dept.* 8 F.3d 358, 363-64 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177 (1994) (citation omitted). Thus, to the extent Williams was attempting to assert claims against Defendants Hopson and Daniels in their official capacities, he has failed in this endeavor. This leaves only Williams' request for damages from Defendants Hopson and Daniels in their individual capacities.

### A. *Argument one: The use of deadly force was reasonable.*

The right purportedly transgressed was William's Fourth Amendment right not to be subjected to, and to be protected from, deadly excessive force during his arrest. Using deadly force against a suspect is constitutionally permissible if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others." *Garner v. Tennessee*, 471 U.S. 1, 9,11 (1985). The challenged conduct must be viewed from the perspective of a reasonable officer on the scene, in light of the facts and circumstances facing the officer—not from the perfect vision of hindsight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). A court evaluating such conduct must consider the totality of the surrounding circumstances, bearing in mind an on-the-spot decision as to the appropriate amount of force often is made instantly, under tense, uncertain, and rapidly-developing conditions. *Garner*, 471 U.S. at 8-9. The decision, therefore, must be viewed with a measure of deference. *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396).

The Court has held previously, under the totality of circumstances, a reasonable officer in Chief Deputy Holt's position would have felt his life or person to be in danger, and that, in view of the deference to be afforded to an officer's decision to shoot, Chief Deputy Holt was justified in

5

using whatever force was necessary, even deadly force, to protect himself (Ct. File No. 92, Mem. Op. at 9).

### B. Argument two: Defendants Hopson and Daniels were in no position to prevent the use of deadly force.

An officer who does not employ excessive force himself can still be held liable if he owes the victim a duty of protection against the use of deadly excessive force by other officers. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). To prevail on a "failure to protect" claim, a plaintiff must show: "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.*[2]

Here, both Defendants have attested in their affidavits they were "a considerable distance" from Chief Deputy Holt when the shooting occurred. No evidence to show the exact distance has been placed in the record by Williams. Even so, the record implies that the events immediately preceding the shooting occurred rapidly and does not support an inference that there was sufficient time for Defendants Hopson and Daniels to stop the shooting. Obviously, Williams cannot sustain the first element of his failure-to-protect claim, given the Court's conclusion that no excessive force was used. Moreover, absent some evidence to suggest Defendants Hopson and Daniels truly had an opportunity to intercede in the shooting, Williams has also failed to shoulder his burden of proof on the second element of his claim. *See Catrett*, 477 U.S. at 323 (where nonmoving party fails to make a sufficient showing on an element of his case on which he bears the burden of proof, his

---

[2] While an excessive-force claim and a failure-to-protect claim have different elements and are legally distinct, they are somewhat intertwined since the duty to protect will not arise unless there was excessive force.

opponent is "entitled to a judgment as a matter of law").

  **C.**  *Argument three: Defendants Hopson and Daniels enjoy qualified immunity.*

Qualified immunity protects governmental officials from suit where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *See Malley v. Briggs*, 475 U.S. 335, 341, (1986) (qualified immunity safeguards "all but the plainly incompetent or those who knowingly violate the law"). The qualified-immunity inquiry has two components. First, a court must ask whether "the facts alleged show the officer's conduct violated a constitutional right" when "[t]aken in the light most favorable to the party asserting the injury." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citation omitted). If the answer is "yes," the court then asks whether the right was clearly established. *Id.* at 201. A "clearly-established" right is one which has decided by the Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged violation occurred. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

Having found Williams has not alleged a constitutional violation on the part of Defendants Hopson and Daniels, the Court need not determine whether the right at issue was well-established at the time of the shooting. *Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). Thus, the remaining Defendants enjoy qualified immunity from this suit for damages.

**IV.** **CONCLUSION AS TO SUMMARY JUDGMENT MOTION**

The Court finds there is no genuine issue of material fact and that Defendants Hopson and Daniels are entitled to judgment as a matter of law because the use of deadly force was justified;

because they did not violate Williams' Fourth Amendment right to be protected from deadly excessive force; and finally, because they have qualified immunity from this lawsuit. Accordingly, their summary judgment motion (Ct. File No. 97) will be **GRANTED** by separate order.

## V. OTHER MOTIONS

Defendants Hopson and Daniels have moved the Court for an order of protection to shield them from Williams' second set of Interrogatories, based on his failure to obtain leave of the Court, as required in the Rules of Civil Procedure, to serve them with more than twenty-five questions (Ct. File Nos. 100, 102). Williams too has filed a motion. In his motion, he seeks leave to complete discovery (Ct. File No. 101). The above disposition of the summary judgment motion has rendered these pending motions **MOOT**, and therefore, they will be **DENIED**.

A separate order will enter.

**ENTER**:

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**